## IN THE COURT OF APPEALS OF IOWA

No. 24-0983
Filed October 2, 2025

**IN THE INTERESTS OF V.W. and A.W.,**
**Minor Children,**

**A.W., Father,**
　　Appellant.
_____

Appeal from the Iowa District Court for Polk County, Erik Howe, Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Teresa Pope of Pope Law, PLLC, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

A father appeals the termination of his parental rights to his children, V.W. and A.W., both born in 2016.[1] He contends termination is not in the children's best interests, and he requests a guardianship and bridge order as an alternative to termination. Upon our review, we affirm.

## I. Background Facts and Proceedings

The father is the legal father of V.W. and the putative father of A.W. Mindy is A.W.'s biological mother. V.W.'s mother was incarcerated throughout most of these proceedings, and her parental rights are not at issue in this appeal. V.W. and A.W. have resided with Mindy since infancy; at the time of the termination hearing the children were each seven years of age.

This family most recently came to the attention of the Department of Health and Human Services (HHS) in May 2022,[2] upon reports of the father using methamphetamine in the home while parenting the children. The father denied any current or past substance use. He refused to consent to a hair test but agreed to urine and sweat patch tests. The father did not initially follow through with either the urine or sweat patch tests. The children were adjudicated in need of assistance (CINA) and allowed to remain with Mindy under a safety plan directing the father to leave the home and allowing him only professionally supervised interactions with the children.[3]

---

[1] V.W.'s mother's parental rights were also terminated; she does not appeal. A.W.'s mother's parental rights were not terminated.

[2] In 2019, the children were subjects of founded child protective assessments for dangerous substances due to the father's substance use while residing in the family home.

[3] The father and Mindy thereafter ended their relationship.

The father did not begin engaging in visits until August, and even then, his participation was sporadic. He also failed to provide drug screens. The court entered a dispositional order in November, noting in part: "HHS has had little contact with [the father] despite a number of attempts to engage him in updating the social history. HHS has no information to indicate [he] is participating in any substance abuse treatment and mental-health services."

Meanwhile, the children were doing well in Mindy's custody. Mindy was reported to be "protective of the children." There were also no concerns about substance use by Mindy. She acknowledged past use but reported she had been sober since 2016, and she participated in random screens that were negative for all substances.

The father completed inpatient treatment and was successfully discharged in April 2023 for "an amphetamine use disorder, severe." Several weeks later, however, the father stopped responding to service providers to confirm visits with the children. HHS reported he "refused services" or "struggle[d] to engage in services and constantly disengage[d] for weeks at a time." His communications with the caseworker were troubling, including statements like "You work for a company bent on destroying families," and "If I was an alcoholic like Mindy, I'd be cleared to be a care taker . . . lol the irony."

In November, the court continued the permanency hearing to allow the father to "provide a drug screen patch today, comply with HHS recommendations, and maintain consistent contact with [the] children." The court advised the father, "I do also believe you know that the Department considers any drug screen that is not complied with to be a drug screen that reflects use." The next day, the father

texted the caseworker, stating, "I didn't go. Doesn't make sense to lie, it would be dirty so there is the result." In response to the caseworker's inquiry into his "drug of choice," the father responded, "same as always—methamphetamine."

The State initiated termination-of-parental-rights proceedings in February 2024. The trial took place over three days in March and April 2024. The father testified he re-engaged in substance-abuse treatment services in December 2023. He stated he completed intensive outpatient treatment in February 2024, and he thought he was "a little over halfway" done with extended outpatient treatment. He had also started medication-assistance treatment and individual therapy "[t]o address my anger, outbursts, and my recovery." The father requested the court enter "[a] bridge order or a guardianship" in lieu of termination of parental rights. When asked why termination would not be in the children's best interests, he responded, "Because they need me in their life. I'm their dad. And I have been their dad, and I'm trying my hardest to do everything right." He also stated that "historically" Mindy had "set appropriate boundaries with [him]," which he respected.

By all accounts, the children were thriving in Mindy's home. HHS and the guardian ad litem opined termination of the father's parental rights would be in their best interests. The court thereafter entered an order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(f) (2024). He appeals.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Upon review, our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the

defining elements of which are their safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Analysis

In our review, we use a three-step analysis: first, determine if a ground for termination exists under Iowa Code section 232.116 paragraph (1); next, apply the best-interests framework from paragraph (2); and last, consider if any exceptions from paragraph (3) apply to preclude termination. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). Because the father does not contest the existence of the grounds for termination, we need not discuss this step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

## A. Best Interests

When determining best interests, we give primary weight to "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental and emotional conditions and needs of the child[ren]." Iowa Code § 232.116(2). Here, these factors all weigh in favor of termination.

The father claims "[g]iven his engagement in services and demonstrated sobriety, [he] was rectifying the safety concerns that brought the children to the court's attention." However, when presented with the significant concerns relating to his methamphetamine use that prompted HHS's involvement in this case, the father failed to meaningfully engage in services for nearly one year. When he did, he completed inpatient treatment but relapsed shortly after. The caseworker testified the father had not re-engaged in services "until recently." As she explained, "He would go two, three weeks without visits with the children, and he

would go sometimes with not responding to me. . . . He would not engage in recommended services." Between May 2023 and the termination trial, the father provided three drug screens, and he refused all others. For example, the caseworker stated, "I would ask him [to test] immediately after court. He would agree to go, but then not participate." She also expressed skepticism of his recent December 2023 substance-use evaluation, stating the evaluator "had recommended inpatient," but then changed it to "recommend outpatient." When she asked "what made them change their minds on the recommendation," the evaluator explained, "it's the client's job, I guess, to accept or not go to the treatment. They can't force anyone to attend treatment, so they just accommodate to whatever the client sees fit." In short, the caseworker was concerned "that it's just when we are sitting here on the eve of termination basically that [the father] decided to utilize the services that he's clearly known that he needs," agreeing the father "picks and chooses when he wants to be a father and when he doesn't want to be."

The father further claims that it is not in the children's best interests that his "ongoing child support payments would stop for both children with a termination of parental rights." Mindy agreed the father paid "half" of the household bills "[w]hen [they] lived together up until 2020." She further stated, however, "since I have bought my home . . . and we have moved out, randomly, he has given me money if I have asked, or I think the first Christmas in 2020 we did split it 50/50. But other than that, it hasn't really been significant." She stated although she "live[s] paycheck to paycheck," the children "have everything they need plus definitely most of what they want."

In assessing the best interests of these children, we must look at their long-range as well as immediate interests.  *See In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989).  While the father expressed a desire in having continued contact with the children, he has failed to follow through with the case plan, he continues to struggle with his addiction, and his irregular financial contributions have not been a significant source of support for the children.  The children are bonded with Mindy and are well-provided for in her home.  Termination is in their best interests.

## B.    Permanency Options

As part of his best-interests and exceptions-to-termination arguments,[4] the father claims that rather than terminating his parental rights it would be better to place V.W. in a guardianship and enter a bridge order for A.W. placing her in Mindy's custody.  *See* Iowa Code § 232.117(5) (allowing the court, after a termination hearing, to not order termination of parental rights but instead enter an order in accordance with several sections, including section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to enter an order transferring guardianship and custody of the child to fictive kin); *see also id.* § 232.103A(1) (allowing the court to close a CINA case by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a bridge order).

To establish a guardianship in lieu of termination, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interests of the child."  *Id.* § 232.104(4)(a).  However, "a guardianship is not a legally preferable alternative to termination."  *In re B.T.*, 894

---

[4] The father also makes a stand-alone argument raising this claim.  We address them collectively.

N.W.2d 29, 32 (Iowa Ct. App. 2017).  A guardianship does not provide the same level of stability and safety for a child as termination of parental rights and adoption because a guardianship is not permanent.  *See A.S.*, 906 N.W.2d at 478.  "The impermanent nature of guardianships denies children the security and stability that a permanent home provides."  *In re A.C.*, No. 23-0567, 2023 WL 3612382, at *2 (Iowa Ct. App. May 24, 2023).

Although the father believed Mindy was "[a]bsolutely" capable of "sort[ing] out what level of contact" he would have with the children, Mindy disagreed, stating:

> It would be hard to—in a guardianship and a bridge order where visitation was ordered, it would be hard to, I think, make that decision to not allow him to have the visitation that he was awarded if I had suspicion that he was using or things like that.  In the past, I have drug tested him myself.  And when he's not using, he takes them willingly, and when he is using, it's always a fight, but it's never because he's using.  It's an excuse to why he can't take it, which I— over the years, I know when [he] is using and when he's not.  But as far as with the termination, he wouldn't have any power.  He would be forced to respect my decision.  And, I mean, I almost think it would make him try harder to be able to see the girls and be the person that the girls could see if it was solely up to me.

The caseworker, who expressed concern about the father's ability to maintain sobriety long-term, opined, "A guardianship doesn't ensure [the father] will remain clean and sober after this court proceeding" and it would not be "fair" to Mindy to have "to navigate whether [the father's] contact should be supervised and whether he is clean."

Ultimately, the court declined the father's request, stating:

> [F]rom the Court's view, both [A.W.] and [V.W.] require the type of permanency provided only by the stability of termination and adoption.  Much of their lives have been dominated by court hearings, involvement with child welfare authorities, and interminable

waiting for a time when they can just live normal lives absent court involvement.  They have had to wait long enough for [the father] to get a handle on the issues which led to court involvement and even though he has effectively already received a six-month extension he still is not at a place that even he feels ready for return.  His arguments that the children's best interests would be served by guardianship or a bridge order seem to ring hollow as the benefits espoused for those permanency options all equate to benefits to [the father], not to the children.  Mindy herself seemed to recognize the importance of this finality as she indicated she was interested in [the father] being part of the children's lives when he was healthy and well but, due to their past relationship and the way [the father] behaves when he is not doing well she was reluctant to be put in a "referee" position when it came to the children.  Giving her the full authority to control who can see the children and when and not subjecting her, and the children, to future, potentially protracted, legal proceedings is what best serves the children's best interests.

We concur in the court's conclusion that termination of the father's parental rights is the most appropriate permanency option under these facts and circumstances.

We affirm the termination of the father's parental rights.

**AFFIRMED.**